146 F.3d 1141
 98 Cal. Daily Op. Serv. 5080, 98 Cal. Daily
Op. Serv. 6780,
98 Daily Journal D.A.R. 7017,
98 Daily Journal D.A.R. 9410
UNITED STATES of America, Plaintiff-Appellee,
v.
Colby DUBOSE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antoine Jamar DEAN, Defendant-Appellant.
 Nos. 96-30369, 97-30035, 97-30067.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1997.
Decided June 26, 1998.
As Amended on Denial of Rehearing Aug. 31, 1998.
 
 Christine Stebbins Dahl, Assistant Federal Public Defender, Portland, Oregon, for defendant-appellant Dubose.
 Christopher J. Schatz and Thomas J. Hester, Assistant Federal Public Defenders, Portland, Oregon, for defendant-appellant Dean.
 Stephen F. Peifer, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.
 Appeal from the United States District Court for the District of Oregon; Owen M. Panner, Senior District Judge, Presiding. CR-96-00203-OMP,CR-96-00203-1-OMP.
 Appeal from the United States District Court for the District of Oregon; Malcolm F. Marsh, District Judge, Presiding. D.C. No. CR-96-00295-MFM.
 Before: SKOPIL and HAWKINS, Circuit Judges, and MERHIGE,* District Judge.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 We consolidate, for the purposes of this disposition, the sentencing appeals of Antoine Jamar Dean ("Dean") and Colby Dubose ("Dubose"). Dean pleaded guilty to one count of arson, in violation of 18 U.S.C. § 844(i), admitting that he intentionally set fire to the Immanuel Christian Fellowship Church. Dubose pleaded guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). Dean was ordered to pay restitution in the amount of $121,403.10 and Dubose in the amount of $4,510.00, both pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A-3664.
 
 
 2
 Dean and Dubose both argue that the MVRA's requirement of full restitution violates the Eighth Amendment's proscription against excessive monetary sanctions and that the MVRA results in discrimination based on wealth in violation of the guarantee of equal protection of the law. They further contend that the MVRA's imposition of a restitution obligation enforceable for 20 years after their release from prison violates the Eighth Amendment's Cruel and Unusual Punishments Clause. Finally, they argue that the Seventh Amendment requires a jury trial prior to imposition of a substantial restitution debt obligation that is enforceable as a civil judgment lien by the victim of a criminal offense.
 
 
 3
 We hold the Mandatory Victims Restitution Act is constitutional both facially and as applied to Dean and Dubose.
 
 STANDARD OF REVIEW
 
 4
 We review the constitutionality of a statute de novo. See United States v. Hicks, 103 F.3d 837, 847 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1483, 137 L.Ed.2d 694 (1997).
 
 FACTS AND PROCEDURAL HISTORY
 
 5
 In June 1996, Dean set fire to the Immanuel Christian Fellowship Church in Portland, Oregon. Waiving Grand Jury indictment, Dean pleaded guilty to one count of arson in violation of 18 U.S.C. § 844(i). Dean concedes that the arson produced an actual loss of $121,403.10.
 
 
 6
 The district court imposed a sentence of 60 months imprisonment followed by a three-year term of supervised release. The court also imposed a restitution obligation of $121,403.10 under the MVRA, with nominal payments, based on Dean's indigency, of $5.00 per month during Dean's incarceration after his qualification for in-custody employment and $25.00 per month for 20 years following his release. Dean appeals, challenging the constitutionality of the MVRA.
 
 
 7
 In 1996, Colby Dubose robbed the First Interstate Bank in Albany, Oregon of $4,510.00. After Grand Jury indictment for one count of bank robbery in violation of 18 U.S.C. § 2113(a), Dubose pleaded guilty. At sentencing, the court imposed a sentence of 151 months and entered a restitution order of $4,510.00 pursuant to the MVRA; the court also ordered nominal periodic payments based on Dubose's indigency. The court ordered Dubose to make payments of $5.00 per month after qualifying for in-custody employment and $25.00 per month for 20 years after release. Dubose appeals, challenging the constitutionality of the MVRA.[1]
 
 I. The Mandatory Victims Restitution Act
 
 8
 The Victim and Witness Protection Act of 1982 ("VWPA"), the MVRA's predecessor statute, permitted courts to impose restitution to victims as part of any sentence. See 18 U.S.C. §§ 3663-3664 (1994).[2]
 
 
 9
 Congress enacted the MVRA in 1996. See Pub.L. No. 104-132, Title II, §§ 201-211, 110 Stat. 1214; 18 U.S.C. §§ 3663A-3664 (Supp. II 1996). It makes restitution mandatory, without regard to a defendant's economic situation, see 18 U.S.C. § 3664(f)(1)(a), to identifiable victims who have suffered physical injury or pecuniary loss,[3] from crimes of violence, crimes against property, and crimes related to tampering with consumer products, see 18 U.S.C. § 3663A(c).
 
 
 10
 Dean and Dubose are subject to that part of the statute which provides that restitution must consist of the full value of the property loss or damage, see 18 U.S.C. § 3663A(b)(1)(B), and all victim expenses incurred as a result of the investigation and prosecution of the offense, see 18 U.S.C. § 3663A(b)(4). In considering the manner and schedule of payment, the court is required to consider the defendant's financial resources, assets, projected income, and financial obligations, based on an affidavit supplied by the defendant. See 18 U.S.C. § 3664(d)(3) & (f)(2).
 
 
 11
 The court may then "direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). The court also may allow nominal payments if the defendant's financial situation does "not allow the payment of any amount of a restitution order, and [does] not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(3)(B). If a defendant's financial situation materially changes, the court and the Attorney General must be notified. The court may then adjust the payment schedule or order immediate full payment. See 18 U.S.C. § 3664(k).
 
 
 12
 Restitution liability lasts for 20 years after incarceration (or until defendant's death). See 18 U.S.C. § 3613(b). Interest accrues on restitution, see 18 U.S.C. § 3612(f), and restitution is non-dischargeable in bankruptcy, see 18 U.S.C. § 3613(e).
 
 
 13
 The conviction giving rise to the restitution order "estop[s] the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding ..., to the extent consistent with State law, brought by the victim." 18 U.S.C. § 3664(l ). The MVRA also provides that upon a victim's request, the "clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order." 18 U.S.C. § 3664(m)(1)(B). When recorded, this abstract becomes a lien on the property of the defendant "located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State." Id.
 
 
 14
 If a defendant defaults on a restitution order, the court has nine options: revoking supervised release or probation, modifying the terms or conditions of supervised release or probation, resentencing the defendant under 18 U.S.C. § 3614, holding the defendant in contempt of court, entering a restraining order or injunction, ordering the sale of the defendant's property, accepting a performance bond, entering or adjusting a payment schedule, or "tak[ing] any other action necessary to obtain compliance." 18 U.S.C. § 3613A(a)(1). In determining the appropriate action, the court must consider "the defendant's employment status, earning ability, financial resources, the willfulness in failing to comply with the ... restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order." 18 U.S.C. § 3613A(a)(2). A defendant who knowingly fails to make payment or for whom "alternatives to imprisonment are not adequate to serve the purposes of punishment and deterrence," may be resentenced, see 18 U.S.C. § 3614(a) & (b), but "[i]n no event shall a defendant be incarcerated ... solely on the basis of inability to make payments because the defendant is indigent," 18 U.S.C. § 3614(c).
 
 II. Eighth Amendment Challenges
 
 15
 Dean and Dubose each contend that the MVRA violates the Eighth Amendment prohibitions against excessive fines and cruel and unusual punishment.
 
 
 16
 The sanction at issue must be construed as punishment for the Eighth Amendment to be implicated. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although one district court has held that restitution is not punishment, see United States v. Marron, No. CRIM.A.93-90, CIV.A.95-2231, 1996 WL 677511, at * 7 (E.D.Pa. Nov. 22, 1996), restitution under the MVRA is punishment because the MVRA has not only remedial, but also deterrent, rehabilitative, and retributive purposes, see Austin v. United States, 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (if a sanction has a remedial purpose, but it also has a retributive or deterrent purpose, the Eighth Amendment is invoked). The legislative history of the Act makes this clear. See, e.g., H.R.Rep. No. 104-16, at 5 (1995), reprinted in 1995 WL 43586 (stating that the law both "strives to provide [victims] with some means of recoup[ment]" and "requir[es] the offender to face the harm suffered by his victims and to others harmed by his unlawful actions."); S.Rep. No. 104-179, at 18 (1995), reprinted in 1996 U.S.C.C.A.N. 924, 931 (emphasizing "the benefits that even nominal restitution payments have for the victim of crime, as well as the potential penalogical [sic] benefits of requiring the offender to be accountable for the harm caused to the victim").
 
 
 17
 Moreover, that restitution is tied to the culpability of the defendant "makes [it] look more like punishment." Austin, 509 U.S. at 619, 113 S.Ct. 2801. Finally, restitution has historically been understood as punishment. See Note, Victim Restitution in the Criminal Process: A Procedural Analysis, 97 Harv. L.Rev. 931, 933-34 (1984).
 
 
 18
 So, restitution under the MVRA is punishment. But that alone does not run it afoul of constitutional requirements.
 
 A. Excessive Fines
 
 19
 Dean and Dubose contend that the MVRA violates the Eighth Amendment prohibition against excessive fines.
 
 
 20
 Dean and Dubose rely on forfeiture cases in arguing that restitution under the MVRA should be subject to the Eighth Amendment forfeiture analysis, which examines the nexus between the forfeited property and the crime, the harshness of the forfeiture, and the culpability of the property's owner. See United States v. Real Property Located in El Dorado, 59 F.3d 974, 985-86 (9th Cir.1995).
 
 
 21
 Forfeiture and restitution are distinct concepts. Although civil forfeiture analysis is inapplicable to the restitution inquiry, analysis of criminal in personam forfeiture is instructive. Unlike the legal fiction that civil in rem forfeiture is a proceeding against the "guilty" property, criminal in personam forfeiture is a proceeding against the wrongdoer personally and therefore constitutes punishment and a "fine" within the meaning of the Excessive Fines Clause. United States v. Bajakajian, 118 S.Ct. 2028, 2036 (1998). The Supreme Court recently addressed "[t]he constitutional question ... [of] how proportional to a criminal offense a fine must be" and held that the appropriate standard is gross disproportionality. Id. at 2037.
 
 
 22
 Thus, we must determine whether the restitution orders imposed on Dean and Dubose under the MVRA are grossly disproportional to the crime committed. As the district court concluded, proportionality is inherent in a MVRA restitution order. "Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order." United States v. Dean, 949 F.Supp. 782, 786 (D.Or.1996). Cf. United States v. Feldman, 853 F.2d 648, 663 (9th Cir.1988) (holding that forfeiture of proceeds does not constitute an "excessive fine" under the Eighth Amendment because when the district court orders a defendant to forfeit proceeds gained from illegal activity, "it is hard to imagine how such a forfeiture could constitute cruel and unusual punishment.") (citation omitted).
 
 
 23
 Dean and Dubose also argue that "imposition of restitution has traditionally been constrained by an offender's current and prospective ability to pay." Although the MVRA does require an examination of the defendant's financial resources to determine whether an alternative and/or nominal payment schedule should be allowed, such a determination is merely permitted--not required--if the court, after examination of the defendant's financial picture, decides that the defendant is without adequate financial resources.
 
 
 24
 A defendant's financial condition does not, however, limit a court's discretion in fashioning an appropriate sanction. While El Dorado did construct an Eighth Amendment proportionality test for forfeitures which included consideration of the financial hardship of the defendant, it concluded by stating that if a forfeiture is found excessive, "the court should limit it to an appropriate portion or the more poisonously tainted portion of the property." El Dorado, 59 F.3d at 987. Therefore, El Dorado supports a conclusion that in the restitution context, because the full amount of restitution is inherently linked to the culpability of the offender, restitution orders that require full compensation in the amount of the loss are not excessive. Moreover, in the excessive bail context, there is no required inquiry into an offender's ability to pay, see Salerno, 481 U.S. at 754, 107 S.Ct. 2095--further supporting the conclusion that an Eighth Amendment gross disproportionality analysis does not require an inquiry into the hardship the sanction may work on the offender.
 
 
 25
 Accordingly, we reject defendants' contention that the MVRA violates the Eighth Amendment's proscription against excessive fines, either facially or as applied.
 
 B. Cruel and Unusual Punishment
 
 26
 Dean and Dubose argue that the "extensive governmental oversight over the life of the defendant contemplated by the MVRA", as well as the MVRA's requirement of mandatory imposition of full restitution, offend the Eighth Amendment's prohibition of cruel and unusual punishment. We reject both arguments.
 
 
 27
 Defendants' contention that the MVRA's requirement of mandatory imposition of full restitution constitutes cruel and unusual punishment flies in the face of the Supreme Court's Eighth Amendment jurisprudence. In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a Supreme Court plurality agreed that "mandatory penalties may be cruel, but they are not unusual in the constitutional sense." Id. at 994, 111 S.Ct. 2680. Harmelin argued that it is cruel and unusual to impose a mandatory punishment without taking into account individual, mitigating factors. See id. The Court rejected this notion for a punishment as extreme as life imprisonment without parole; certainly, the same reasoning holds true for mandatory imposition of restitution, both in general and as applied to these defendants.[4]
 
 
 28
 Similarly, defendants' contention that extensive government oversight over the life of a defendant constitutes cruel and unusual punishment does not meet the Eighth Amendment standard. Defendants argue that government oversight over a person subject to the MVRA is disproportionate to any harm inflicted because that person is subject to a custodial sentence as well as a restitution obligation. In Harmelin, however, a majority of the Supreme Court held that the Cruel and Unusual Punishments Clause of the Eighth Amendment contains no proportionality guarantee.[5] At most, the concurrence concluded, instead of requiring a "strict proportionality between crime and sentence," the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring). The plurality opinion suggests that what constitutes "cruel and unusual punishment" should be determined by reference to traditional and prevailing standards of decency. Either standard is difficult to meet: for example, in Harmelin, the plurality found nothing cruel and unusual in the defendant's sentence of a mandatory life term without parole for possessing 672 grams of cocaine. See id. at 994-96, 111 S.Ct. 2680.
 
 
 29
 Accordingly, the Cruel and Unusual Punishments Clause of the Eighth Amendment contains no proportionality guarantee. Moreover, it would be difficult to find any mandatory restitution imposed under the MVRA cruel and unusual under Harmelin, for it would neither be grossly disproportionate to the crime, see Part IIA supra, nor would it offend societal notions of decency. This is particularly so in the cases of Dean and Dubose, who were sentenced to 60 months and 151 months imprisonment, respectively, and were ordered to pay $5.00 per month while working in prison and $25.00 per month for 20 years following their prison terms.
 
 
 30
 Heeding the lesson of Harmelin that cruel and unusual punishment is an extremely difficult standard to meet, we hold that mandatory restitution under the MVRA does not offend the Eighth Amendment's prohibition against cruel and unusual punishment.
 
 III. Fifth Amendment Equal Protection[6]
 
 31
 Dean and Dubose argue that the MVRA violates the principle of equal protection of the law under the Due Process Clause of the Fifth Amendment.[7] They contend that, "the MVRA necessarily leads to invidious discrimination based on wealth, given that wealthy individuals will be able to pay off their restitution obligations, while impecunious individuals ... will be forced to bear the social disadvantages which adhere to a debtor."
 
 
 32
 Although the government responds that the MVRA's protection for indigent defendants nullifies these claims, nothing in the MVRA requires courts to protect indigent defendants--it merely allows them to do so.
 
 
 33
 The constitutional standard, however, is nondiscrimination with regard to indigents. The MVRA meets this standard. Under Williams v. Illinois, 399 U.S. 235, 242, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and Tate v. Short, 401 U.S. 395, 398, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), indigents cannot be subject to increased imprisonment or a period of imprisonment beyond the statutory maximum solely on the basis of their indigency. Accordingly, an indigent defendant cannot be resentenced under the MVRA solely on the basis of an inability to pay restitution. See 18 U.S.C. § 3614(c). Moreover, the statute meets the Bearden v. Georgia, 461 U.S. 660, 674, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), requirement that a defendant cannot be resentenced for mere failure to pay a fine unless it can be proved that the defendant did not make bona fide efforts to pay the fine or that alternative forms of punishment would not meet the state's interests in punishment and deterrence. See 18 U.S.C. § 3614(b).
 
 
 34
 Defendants' Fifth Amendment claims therefore fail.
 
 
 35
 IV. Seventh Amendment Requirement of a Jury Trial
 
 
 36
 Dean and Dubose claim that "by providing for conversion of restitution orders into enforceable civil judgment liens, the MVRA violates the Seventh Amendment's guarantee of trial by Jury."[8]
 
 
 37
 Numerous circuit courts of appeal, including this one, rejected the argument that restitution orders under the VWPA--the predecessor statute of the MVRA--were subject to the Seventh Amendment. See United States v. Keith, 754 F.2d 1388, 1391-92 (9th Cir.1985); United States v. Brown, 744 F.2d 905, 910 (2d Cir.1984); United States v. Florence, 741 F.2d 1066, 1067-68 (8th Cir.1984); United States v. Satterfield, 743 F.2d 827, 839 (11th Cir.1984); United States v. Watchman, 749 F.2d 616, 617 (10th Cir.1984). They held that restitution pursuant to the VWPA did not violate the Seventh Amendment's jury trial right because "the victim enforcement provision in the Act does not transform a sentencing proceeding resulting in a restitution order into an 'action at common law' within the meaning of the seventh amendment." Keith, 754 F.2d at 1392.
 
 
 38
 Defendants nevertheless argue, unpersuasively, that the MVRA is unconstitutional because "the judge no longer has discretion in fixing the amount of restitution, which must be imposed in the full amount of actual loss."[9]
 
 
 39
 Yet it is still true under the MVRA, as it was under the VWPA, that "[t]he inclusion of this civil enforcement provision does not transform the restitution order into an action at common law." Satterfield, 743 F.2d at 839. In determining that the restitution order was not transformed into a common law suit, the courts that have addressed the issue under the VWPA pointed to several factors. One of these factors was the courts' exercise of judicial discretion in imposing the amount of restitution. See, e.g., United States v. Palma, 760 F.2d 475, 479 (3d Cir.1985) ("[I]n ordering restitution, the court must consider the defendant's ability to pay, a factor that would normally be irrelevant in a civil adjudication."). Under the MVRA, however, while judges must impose the full amount of loss as restitution, they have considerable discretion to impose nominal, in-kind, and periodic payments. That courts cannot exercise discretion as to the technical amount of restitution that would theoretically be recovered is of no import.
 
 
 40
 More broadly, "the procedures for imposing restitution differ ... from a traditional civil proceeding." Palma, 760 F.2d at 479. As under the VWPA, "the [MVRA] victim is limited to recovering certain specified losses." Id. Moreover, "[t]he fundamental and obvious difference ... [between a restitution order and a civil adjudication] is that restitution occurs only after an adjudication of guilt." Brown, 744 F.2d at 909.
 
 
 41
 Finally, civil enforcement of criminal penalties does not transform a restitution order into a common law suit. See Satterfield, 743 F.2d at 839. "So long as the restitution provision is a permissible form of punishment, it is not subject to civil requirements simply because it also achieves some of the purposes of a civil judgment. Restitution undoubtedly serves traditional purposes of punishment." United States v. Brown, 744 F.2d 905, 909.
 
 
 42
 Accordingly, we reject defendants' argument that the MVRA violates the Seventh Amendment's guarantee of trial by jury.
 
 
 43
 The judgments of the district courts in Nos. 96-30369 and 97-30067 ("Dubose") and No. 97-30035 ("Dean") are AFFIRMED.
 
 
 
 *
 Honorable Robert R. Merhige, Senior United States District Judge for the Eastern District of Virginia, sitting by designation, participated in the oral argument and disposition of this case prior to his resignation on June 8, 1998
 
 
 [1]
 Dubose also appeals the district court's refusal to grant a downward departure at sentencing. He argued before the district court that the career offender sentence, see United States Sentencing Guidelines § 4B1.1, over-represented his criminal history. He argues on appeal that the district court did not understand that it had the authority to change the offense level if the career offender increase caused the seriousness of the offense to be over-represented and resulted in an unjust sentence. To the contrary, the record reflects that the court recognized that it had the discretion to depart downward but simply refused to exercise that discretion. Because "the judge's decision does not indicate that he believed he was prevented from departing downward as a matter of law," as evidenced by the court's statements that it considered the proffered reasons for departure but found them lacking, "the decision is discretionary and thus not reviewable" on appeal. United States v. Pinto, 48 F.3d 384, 389 (9th Cir.1995)
 
 
 [2]
 Hughey v. United States, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), narrowed the VWPA by stating that restitution may only be awarded for victims' losses resulting from the specific conduct for which the defendant was convicted
 
 
 [3]
 The MVRA does not apply when "the number of identifiable victims is so large as to make restitution impracticable" or when "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)
 
 
 [4]
 Defendants also attempt to utilize dicta found in Justice Kennedy's concurring opinion in Harmelin to argue that "[i]n the absence of any factual basis to predict that the objective of full restitution is attainable, imposition of such a sentence is cruel." Justice Kennedy, however, opined that if it was clear that an objective is not attainable, a punishment may be grossly disproportionate, see Harmelin, 501 U.S. 957, 1008, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring), whereas Dean argues that if there is no factual basis to predict that the objective of full restitution is attainable, "imposition of such a sentence is cruel." These are clearly two different matters entirely
 
 
 [5]
 In the context of cruel and unusual punishment, the Court's Harmelin analysis renders the conclusion that only death penalty cases should be subject to the proportionality analysis. Proportionality was recognized by the Court "as an aspect of our death penalty jurisprudence, rather than a generalizable aspect of Eighth Amendment law.... Proportionality review is one of several respects in which we have held that 'death is different.' " Harmelin, 501 U.S. at 994, 111 S.Ct. 2680
 
 
 [6]
 The Fifth Amendment provides: "No person .... shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V
 
 
 [7]
 "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." Buckley v. Valeo, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)
 
 
 [8]
 The Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."
 
 
 [9]
 They also argue that, unlike the VWPA, "the MVRA specifically enables the victim beneficiary of a restitution order to obtain an abstract of judgment which, upon being properly recorded, serves as a fully enforceable civil lien against the property of the defendant debtor." The VWPA, however, also allowed victims to enforce restitution orders "in the same manner as a judgment in a civil action." 18 U.S.C. § 3579(h) (repealed 1996). See Satterfield, 743 F.2d at 838 (stating that the VWPA "makes the civil judgment enforcement mechanism available to the United States or the victim following an order of restitution")