[Cite as *In re D.W.*, 2019-Ohio-5259.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                                    :

[D.W., A Delinquent Minor,                 :                    No. 19AP-221
                                                                            (C.P.C. No. 15JU-14385)

                                                             :

          Appellant].                                                 (ACCELERATED CALENDAR)

                                                             :

D E C I S I O N

Rendered on December 19, 2019

**On brief:**  *Victoria E. Ullmann*, for appellant.

***On brief:***  *Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, J.

{¶ 1}   D.W., an adjudicated delinquent minor, appeals the order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, approving and adopting a magistrate's decision committing him to a 90-day placement at the Central Ohio Youth Center ("COYC") after finding he had committed a violation of the terms of his probation.

{¶ 2}   On November 26, 2015, D.W. entered an admission and was adjudicated delinquent for the offense of burglary.  He was placed on probation on February 17, 2016. He was first found to have violated his probation by continuing to test positive for marijuana on November 8, 2016.  He was then found to have violated both his probation by being suspended from school and absconding on March 2, 2017, and placed on electronic monitoring.  D.W. was suspended from school and absconded a second time on May 3, 2017, and was again found to have violated his probation on May 25, 2017.  As a result, he was removed from his mother's home on June 8, 2017, and placed at Maryhaven.  On

No. 19AP-221

August 1, 2017, he absconded from Maryhaven, and on August 31, 2017, determined to have violated his probation a fourth time.

{¶ 3} D.W.'s probation was extended, and he was placed in the temporary court custody of Franklin County Children Services ("FCCS") and admitted to the Abraxas Ohio residential treatment program. He absconded from Abraxas that same day, but was recovered and he returned to participate in the program. On April 10, 2018, FCCS and the National Youth Advocate Program filed a motion to terminate temporary court custody and return D.W. to the custody of his mother with a court-ordered protective supervision order, "as the youth is set to successfully discharge" from Abraxas, and would then link with Abraxas aftercare services. The magistrate granted the motion on May 10, 2018, and D.W. was returned to his mother's home.

{¶ 4} But on September 14, 2018, he violated probation by absconding yet another time: "[D.W.] is truant from home and has been for over [a] week. His whereabouts are currently unknown. He also has not attended school in a week." (Sept. 14, 2018 Mot. For Violation of Probation.) And as a result of his decision to go absent without leave ("AWOL"), D.W. did not complete the ordered Abraxas aftercare. After nearly three months D.W. turned himself in and admitted the probation violation. Prior to entering an admission, the magistrate cautioned D.W. that he could be held, fined, or committed to the Department of Youth Services ("DYS") as a sanction. The resources team suggested that he be referred to COYC to complete a 90-day intensive program, and the magistrate continued the case so that the referral could be explored. D.W. was subsequently accepted into the COYC program, and following a hearing on December 18, 2018, a different magistrate ordered that D.W.'s probation should be extended an additional 12 months, and indicated that he would be transferred to COYC by January 8, 2019. D.W.'s attorney filed objections to that dispositional decision, arguing in part that it was inappropriate and against the weight of the evidence to impose commitment to COYC. D.W. was transported to COYC on January 8, 2019, and on that same date the magistrate filed a decision supplementing its earlier decision. D.W's attorney objected to that decision as well, arguing the magistrate had inappropriately browbeaten and berated counsel at the December 18 violation hearing, that the transfer was improper, and also that COYC was not an appropriate disposition because it was for chronic offenders.

No. 19AP-221

{¶ 5} On March 14, 2019, the trial court overruled both sets of objections, concluding that the record does not support that "[the] Magistrate acted inappropriately [towards counsel]" and that while transfer of D.W. to COYC may have been premature and should have been stayed while his objections were pending, his "ultimate transfer to COYC was appropriate [and] supported by the record." (Decision at 10.) The court adopted the magistrate's decisions filed December 21, 2018 and January 8, 2019 "with the aforementioned findings and changes herein." This timely appeal followed.

{¶ 6} D.W. now asserts three assignments of error: first, that the trial court abused its discretion in acting punitively toward this youth by confining him in COYC when he posed no threat to the community; second, that the trial court erred in failing to consider additional material regarding the magistrate's improper attacks on counsel; and third, that the trial court erred in finding that the magistrate could send this youth to COYC without a dispositional order. In response, the state argues that the magistrate and judge considered all material presented and that the decision to commit D.W. to COYC was within the court's discretion.

{¶ 7} R.C. 2152.19(A) provides that "[i]f a child is adjudicated a delinquent child, the court may * * * [p]lace the child in a detention facility or district detention facility operated under section 2152.41 of the Revised Code, for up to ninety days," or may "[p]lace the child on community control under any sanctions, services, and conditions that the court prescribes." R.C. 2152.19(A)(3) and (4). R.C. 2152.19(A)(8) further provides that the court may "[m]ake any further disposition that the court finds proper, except that the child shall not be placed in a * * * place in which an adult convicted of a crime, under arrest, or charged with a crime is held." Juvenile dispositions must be "reasonably calculated to achieve the overriding purposes [of R.C. Chapter 2152]," which are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A) and (B). While a juvenile court must consider those purposes, it has "broad discretion to craft an appropriate disposition for a child adjudicated delinquent * * * [and the] court's disposition will be upheld unless there has been an abuse of discretion." *In re D.S.*, 111 Ohio St. 3d 361, 2006-Ohio-5851, ¶ 6.

No. 19AP-221

{¶ 8}   For convenience of analysis, we will address D.W.'s assignments of error out of order. In his second assignment of error, D.W. asserts his counsel was mistreated by the magistrate at the December 18, 2018 dispositional hearing, and that the trial court failed to consider evidence of this mistreatment at the objections hearing. But the record before this court does not demonstrate any mistreatment of counsel at the dispositional hearing, and D.W.'s counsel did not supplement the record at either the objections hearing or in this court with a transcript or any other specific evidence of mistreatment. As the trial court recognized in overruling D.W.'s objection to the magistrate's conduct, "[c]ounsel alludes to [the magistrate's] actions after the hearing but provides no evidence in relation to any post-disposition conversations." (Decision at 8.) At oral argument in this court, counsel stated that the magistrate had "yelled" at her, but admitted that there was nothing in the transcript of the hearing to establish that. Given the lack of any record evidence of misconduct by the magistrate, we must presume the regularity of the proceedings of the trial court. *See, e.g.*, *Ostrander v. Parker-Fallis Insulation Co.*, 29 Ohio St.2d 72, 74 (1972), cited in *In re Fraley*, 10th Dist. No. 85AP-681 (Apr. 3, 1986), (applying presumption of regularity to delinquency proceedings).  Accordingly, D.W.'s second assignment of error is overruled.

{¶ 9}   D.W.'s two remaining assignments of error are related; the first assignment of error essentially argues that the magistrate's decision to send D.W. to COYC was against the weight of the evidence, and the third assignment of error argues that the magistrate's order which committed D.W. to COYC was invalid because objections had not yet been ruled upon. Addressing these same questions, the trial court concluded that while the commitment to COYC was premature and should have been stayed pending a ruling on the objections, it ultimately found that the order transferring D.W. to COYC was appropriate and supported by the record.  We believe the trial court's analysis of these issues was correct.

{¶ 10}  D.W.'s extensive history of probation violations, his unsuccessful completion of Abraxas aftercare, the negative reports of his probation officer, and D.W.'s overall resistance to program participation clearly support continued court intervention, and provide a firm basis for both the decision to accept D.W.'s admission to the probation violation and the subsequent disposition for that violation. And the fact that D.W. stayed AWOL for over 2 months after absconding and failed to complete his aftercare demonstrate

No. 19AP-221

that the trial court's observations that D.W. "is continuing with the same behaviors" and that he "has not learned anything" from all the treatment he has received are accurate. (Decision at 11-12.)

{¶ 11} Given the seriousness of D.W.'s original offense, commitment to DYS custody has always been an available disposition. R.C. 2152.16(A)(1)(e) (authorizing commitment to DYS "for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of twenty-one years of age" for an act that would be a felony of the fifth degree if committed by an adult). Because D.W. has chronically violated the terms of his probation and because he had shown little evidence of accountability and rehabilitation, the trial court was within its broad discretion to impose the lesser disposition of a 90-day commitment to a juvenile detention facility. *See* R.C. 2152.19(A)(3) and *In re D.B.,* 12th Dist. No. CA2005-12-524, 2006-Ohio-3240, ¶ 11 (upholding 30-day commitment to detention center as within court's discretion).

{¶ 12} It was similarly within the trial court's discretion to conclude that the commitment during the pendency of objections, while erroneous, was harmless to D.W. The trial court held that the magistrate's order filed December 18, 2018, which directed the transfer of D.W. to COYC, was not an interim order that authorized immediate relief under Juv.R. 40(D)(4)(e)(ii), because it did not specifically state that immediate relief was required. But that order, along with the transcript of the December 18, 2018, hearing, clearly stated that he was to be transferred to COYC on January 8, 2019. It is true that under Juv.R. 40(D)(4)(e)(i), the filing of objections should have operated as an automatic stay of that transfer, and the trial court correctly held that the transfer should have been stayed. But the trial court was correct in concluding that while the transfer to COYC should not have occurred prior to its ruling on the objections, "[t]here is no remedy for the premature transfer except to credit the youth for the time already participated in the 90-day program. * * * * In light of the procedural mistake and preemptive transfer, his services will now conclude sooner based on time already participated." (Decision at 12.) And in fact, those services have concluded—as his brief acknowledges, D.W. "is now out of COYC and is at home with his mother." (Appellant's Brief at 8.) Accordingly, because the trial court properly held that the commitment was supported by the evidence and statutorily authorized, and because that commitment was not an abuse of discretion, the fact that

No. 19AP-221

commitment occurred earlier than it should have is both an error that cannot be remedied and one that did not injure D.W. in any way. *See, e.g., In re C.S.*, 10th Dist. No. 11AP-667, 2012-Ohio-2988, ¶¶ 21-22 (applying harmless-error analysis). D.W.'s first and third assignments of error are therefore overruled.

{¶ 13} For all these reasons, D.W.'s three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.