[Cite as *In re K.J.*, 2025-Ohio-1424.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of K.J., | : | |
| Appellant. | : | |
| | : | No. 24AP-436 |
| | | (C.P.C. No. 23TJ-493) |
| | : | |
| | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on April 22, 2025

**On brief:** *John T. Ryerson*, for appellant. **Argued:** *John T. Ryerson*.

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BOGGS, J.

{¶ 1} Appellant, K.J., appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which sustained in part K.J.'s objection to a magistrate's decision and ordered K.J. to pay restitution to the victims of his admitted traffic offenses in the amount of $14,198.21. For the following reasons, we affirm the trial court's judgment.

**I. FACTS AND PROCEDURAL BACKGROUND**

{¶ 2} On March 15, 2023, K.J. was cited for the traffic offenses of driving without a license in violation of R.C. 4510.12(A)(1), "hit skip-public roadway" in violation of R.C. 4549.02(A), and reckless operation in violation of R.C. 4511.20(A). (Capitalization deleted.) (Apr. 10, 2023 Compl.) The traffic citation was filed as a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, on April 10, 2023. At the time of the alleged offenses, K.J. was 13 years old and was driving a stolen

vehicle with two other juvenile occupants in the vehicle. K.J. collided with a vehicle driven by 17-year-old, D.H., who was injured in the collision.

{¶ 3} Following an adjudicatory hearing held on June 13, 2023, the trial court magistrate accepted K.J.'s admissions to the offenses of "hit skip-public roadway" and reckless operation. (Capitalization deleted.) (Sept. 28, 2023 Mag.'s Decision.) At the prosecutor's request, the magistrate dismissed the offense of driving without a license. The magistrate found K.J. to be a juvenile traffic offender, and the trial court adopted the magistrate's decision. Following a dispositional hearing on July 11, 2023, the trial court reaffirmed its adjudication, held the case open for 90 days, and allowed the state to file a motion for restitution within 60 days. The trial court again adopted the magistrate's decision.

{¶ 4} The magistrate subsequently held a restitution hearing, at which the state presented testimony from D.H. and his mother, C.H., who owned the vehicle D.H. was driving at the time of the collision. On stipulation of the parties, the trial court accepted into evidence an estimate from Three-C Body Shop for repair of the vehicle D.H. was driving, an invoice from Trinity Health for medical care rendered to D.H. for his injuries, a towing invoice, and estimates from Kelly Blue Book and Edmunds of the value of the vehicle D.H. was driving. The Three-C estimate noted that the vehicle was a total loss. Based on the evidence elicited at the hearing, the magistrate ordered K.J. to pay restitution in the amount of $18,388.87 by January 1, 2027 and referred K.J. into the juvenile restitution program.

{¶ 5} K.J. filed timely objections to the magistrate's decision regarding restitution. He argued that the magistrate's decision was against the manifest weight of the evidence, because the state did not establish the proper amount of restitution and because the magistrate did not divide the restitution amongst K.J. and the two other occupants of the vehicle he was driving. K.J. also argued that R.C. 2152.203, the statute that implements victims' rights to restitution from juvenile offenders under Marsy's Law, is unconstitutional, in violation of the prohibitions against cruel and unusual punishment in the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution. K.J. supplemented his objections once a transcript of the restitution hearing had been filed, and the state filed a memorandum contra.

{¶ 6}  In its decision on K.J.'s objections, filed June 14, 2024, the trial court noted that the magistrate's order of restitution in the amount of $18,388.87 was comprised of a towing fee of $245.96, medical bills of $6,849.25, and the Three-C repair estimate of $11,293.66.  The trial court agreed with K.J. that the magistrate erred by using the repair estimate as the value of the damaged vehicle, and it partially granted K.J.'s objection. (June 14, 2024 Decision & Jgmt. Entry at 2.)  It held that the Three-C estimate for repairs to the vehicle, which the body shop determined was a total loss, exceeded the market value of the vehicle before the accident and was therefore an improper measure of damages. Looking to the other evidence of the vehicle's value, the trial court averaged the values from Kelley Blue Book and Edmunds, and assigned $7,103 as the damage to the vehicle.  The trial court therefore reduced the amount of restitution to $14,198.21. It did not address the constitutionality of R.C. 2152.203, or K.J.'s argument that restitution should be divided amongst all occupants of the vehicle he was driving.

{¶ 7}  K.J. filed a timely appeal and now raises two assignments of error, which parallel the undecided arguments from his objection to the magistrate's decision:

> I.     The Court below erred in failing to find that the statute allowing the imposition of an order of restitution against a juvenile was cruel and unusual punishment, violating the Ohio and United States Constitutions.
>
> II.    The Court below erred in failing to apportion the imposed restitution among the three Co-Defendants in this case.

(Appellant's Brief at 4.)

## II.  ANALYSIS

### A.  Assignment of Error No. 1

{¶ 8}  In his first assignment of error, K.J. challenges the constitutionality of R.C. 2152.203, which provides for the award and calculation of victim restitution against delinquent children and juvenile traffic offenders.

{¶ 9}  In November 2017, Ohio voters passed an amendment to the victim's rights provisions of the Ohio Constitution, known as Marsy's Law, which, in part, provides a crime victim the right "to full and timely restitution from the person who committed the criminal offense or delinquent acts against the victim."  Ohio Const., art. I, § 10a(A)(7).  Although Marsy's Law gives a victim the right to full and timely restitution, it does not prescribe a

procedural mechanism for ordering restitution. It states only that a victim may assert his constitutional rights in any proceeding involving the underlying criminal offense or delinquent act. *Centerville v. Knab*, 2020-Ohio-5219, ¶ 18, citing Ohio Const., art. I, § 10a(B). We therefore look to statutory mechanisms for ordering restitution. *See State v. Yerkey*, 2022-Ohio-4398, ¶ 12. In cases in juvenile court, involving delinquent children or juvenile traffic offenders, the relevant statutes are R.C. 2152.20 and 2152.203.

{¶ 10} R.C. 2152.20(A)(3) sets out statutory authorization for an order of restitution as part of the juvenile court's disposition of a child whom it has adjudicated a delinquent child or juvenile traffic offender. It provides, in relevant part:

> If a child is adjudicated a delinquent child or a juvenile traffic offender, the court may order any of the following dispositions, in addition to any other disposition authorized or required by this chapter:
>
> . . .
>
> (3) . . . [the court may] require the child to make restitution to the victim of the child's delinquent act or juvenile traffic offense in an amount based upon the victim's economic loss caused by or related to the delinquent act or juvenile traffic offense.

The court must determine the amount of "full restitution by a preponderance of the evidence." *Id.* That amount "shall not exceed the amount of economic loss suffered by the victim as a direct and proximate result of the delinquent act or juvenile traffic offense." *Id.* The authorization for restitution as part of a juvenile disposition predated the passage of Marsy's Law.

{¶ 11} R.C. 2152.203(B), enacted after the passage of Marsy's Law, directs that, "[i]n determining the amount of restitution under this section, the court shall order full restitution for any expenses related to the victim's economic loss due to the delinquent act[,] reduced by any payments to the victim for economic loss made or due under a policy of insurance or governmental program." Economic loss includes, but is not limited to, "full or partial payment for the value of . . . damaged property," and "[m]edical expenses." R.C. 2152.203(B)(1) and (2). "If an order remains unpaid in full . . ., a court order for restitution imposed under this section shall be reduced to a civil judgment in favor of the victim prior to the termination of the court's jurisdiction upon the delinquent child's or juvenile traffic offender's attainment of twenty-one years of age." R.C. 2152.203(F).

{¶ 12} K.J.'s first assignment of error contends that R.C. 2152.203 violates the prohibitions against cruel and unusual punishments found in both the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution. The Eighth Amendment, which applies to the states through the Fourteenth Amendment, states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article I, Section 9 of the Ohio Constitution contains the same prohibitions. Despite containing language that is nearly identical to the language of the Eighth Amendment, Article I, Section 9 of the Ohio Constitution provides protection independent of the protections provided by the Eighth Amendment. *State v. Blankenship*, 2015-Ohio-4624, ¶ 31. K.J., however, has not suggested any way in which the Ohio Constitution would provide greater protection than the Eighth Amendment in the context of this case. Therefore, like K.J., we focus primarily on caselaw applying the Eighth Amendment in reviewing K.J.'s constitutional challenge.

{¶ 13} The Eighth Amendment's prohibition of cruel and unusual punishments guarantees the right not to be subjected to excessive sanctions. *Miller v. Alabama*, 567 U.S. 460, 469 (2012), citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005). "A key component of the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " (Brackets in original.) *State v. Moore*, 2016-Ohio-8288, ¶ 31, quoting *Weems v. United States*, 217 U.S. 349, 367 (1910). "[C]ases involving cruel and unusual punishments are rare, 'limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.' " *Blankenship* at ¶ 32, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964). "To constitute cruel and unusual punishment, 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Anderson*, 2017-Ohio-5656, ¶ 27, quoting *McDougle* at 70.

{¶ 14} A party challenging a statute's constitutionality may present a facial challenge to the statute as a whole or may challenge the statute as applied to a specific set of facts. *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 26, citing *Harrold v. Collier*, 2005-Ohio-5334, ¶ 37. In either case, we remain mindful that a statute is to be presumed constitutional, *see State v. Carswell*, 2007-Ohio-3723, ¶ 6, and we will afford a statute "a constitutional interpretation if one is reasonably available," *State v. Thompson*, 92 Ohio

St.3d 584, 586 (2001).  We must uphold a statute "unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional." *State v. Hoover*, 2009-Ohio-4993, ¶ 8.

{¶ 15} Contrary to the broad language K.J. uses in his first assignment of error, he does not actually argue that R.C. 2152.203 is facially unconstitutional, which would require him to demonstrate that there is no set of circumstances in which the statute would be valid. *See Harrold* at ¶ 37, citing *United States v. Salerno*, 481 U.S. 739, 745 (1987).  "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid."  *Id.*  K.J. does not argue that R.C. 2152.203 violates the Eighth Amendment in all its applications.  He argues that, because R.C. 2152.203 authorizes restitution without consideration of the juvenile offender's age or ability to pay and because it provides for an unpaid restitution order to be reduced to a civil judgment before the juvenile reaches the age of 21, the statute "*arguably*" authorizes the imposition of cruel and unusual punishments.  (Emphasis added.)  (Appellant's Brief at 8, 11.)  In other words, he maintains that restitution under R.C. 2152.203 *may* amount to a cruel and unusual punishment, depending on such circumstances as the amount of the restitution, the age of the juvenile, and the juvenile's ability to pay.  This is an as-applied challenge.

{¶ 16} K.J. relies primarily on *Graham v. Florida*, 560 U.S. 48 (2010), in support of his argument that, as applied to juveniles, R.C. 2152.203 provides for cruel and unusual punishments.  *Graham* involved a constitutional challenge to a sentence of life without the possibility of parole for a non-homicide offense committed as a juvenile.  The United States Supreme Court noted that its cases addressing proportionality under the Eighth Amendment fall into two general categories: (1) challenges to the length of a term-of-years sentence, in light of the circumstances of a given case, and (2) cases in which the court imposes a categorial restriction on a particular punishment, based either on the nature of the offense or the characteristics of the offender.  *Id.* at 59-60.  *Graham* involved the latter, a categorical challenge to "a particular type of sentence"—the harshest sentence other than the death penalty—as "applie[d] to an entire class" of juvenile offenders, "who have committed a range of crimes."  *Id.* at 61.

{¶ 17} In determining whether such a sentence ran afoul of the Eighth Amendment, the United States Supreme Court considered "the culpability of the offenders . . . in light of their crimes and characteristics, along with the severity of the punishment in question, . . . [and] whether the challenged sentencing practice serves legitimate penological goals." *Id.* at 67. The court ultimately held that the Eighth Amendment categorically prohibits imposing a sentence of life without the possibility of parole on a juvenile non-homicide offender, because it prohibits the state from determining at the outset that a particular juvenile will never be fit to reenter society. *Id.* at 75. Prior to *Graham*, the United States Supreme Court had adopted categorical challenges under the Eighth Amendment only with respect to the death penalty. *Id.* at 60. *See also id.* at 102 (Thomas, J., dissenting) ("For the first time in its history, this Court declares an entire class of offenders immune from a noncapital sentence using the categorical approach it previously reserved for death penalty cases alone."). K.J. maintains that *Graham* "distinguished the treatment of juvenile offenders in considering the concept of proportionality under the cruel and unusual standard" and that "the same principle of proportionality should apply" here. (Appellant's Brief at 9.)

{¶ 18} The United States Supreme Court more recently considered the effect of youth on the constitutionality of a state sentencing practice in *Miller*, in which it held that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without the possibility of parole for a juvenile offender, no matter the offense. *Miller* at 479. In *Miller*, the court described *Graham* as adopting a "categorial ban[] on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.* at 470. The court reiterated its understanding that juvenile offenders have "diminished culpability," "greater prospects for reform," and " 'are less deserving of the most severe punishments.' " *Id.* at 470, quoting *Graham* at 68. Although *Graham* categorically prohibited life sentences without the possibility of parole only for juveniles who committed non-homicide offenses, the United States Supreme Court recognized in *Miller* that its reasoning in *Graham* "implicates any life-without-parole sentence imposed on a juvenile." *Id.* at 473.

{¶ 19} After noting it had viewed Graham's life sentence without the possibility of parole as akin to the death penalty, the *Miller* court considered another line of cases, in

which it had prohibited mandatory imposition of the death penalty and had instead required courts to consider the characteristics of a defendant and the details of his offense before sentencing him to death. *Id.* at 470, 474-475. Just as the court had prohibited a death sentence without individualized sentencing, it held that the reasoning in *Graham* indicated that "a similar rule should apply when a juvenile confronts a sentence of life (and death) in prison." *Id.* at 477. It stated, "By making youth (and all that accompanies it) irrelevant to the imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at 479.

{¶ 20} The Supreme Court of Ohio relied on *Graham* and *Miller* to determine that age is a relevant factor for felony sentencing under R.C. 2929.12(C) and (E), but it also stated that, "the scope of a trial court's consideration of youth must depend on the constitutional concerns present." *State v. Patrick*, 2020-Ohio-6803, ¶ 28. Like *Graham* and *Miller*, *Patrick* involved a juvenile who had been given a life sentence, albeit one with parole eligibility after 33 years. The Supreme Court of Ohio stated, "[i]f, as *Miller* instructs, youth and its attendant characteristics must be considered when a court imposes its harshest penalties, . . . then youth is also a necessary consideration when a sentencing court determines at what point parole eligibility should be available during a life sentence." *Patrick* at ¶ 32. For purposes of the Eighth Amendment, the court concluded that "the severity of a sentence of life in prison on a juvenile offender, even if parole eligibility is part of the life sentence, is analogous to a sentence of life in prison without the possibility of parole." *Id.* at ¶ 36. Accordingly, it held that a trial court must separately consider a juvenile offender's youth as a mitigating factor before imposing a life sentence, even if the sentence includes eligibility for parole. *Id.* at ¶ 2. Nothing in *Graham*, *Miller*, or *Patrick*, however, suggests that the United States Supreme Court would apply the Eighth Amendment to impose a similar rule relative to less severe term-of-years prison sentences for juvenile offenders, let alone financial sanctions like restitution.

{¶ 21} The life sentences at issue in *Graham*, *Wilson*, and *Patrick* are vastly different than an order to pay restitution to compensate victims for the economic losses suffered as a result of an offender's delinquent acts. *See State v. Richardson*. 890 N.W.2d 609, 622-623 (Iowa 2017) ("[B]eing incarcerated and owing a restitution debt are simply not comparable. One is a matter of liberty, the other a financial obligation."). An order of

restitution is not one of the "harshest penalties." *Miller* at 477 ("*Graham* and *Roper* and our individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult."). Although restitution does serve a punitive function, its primary goal is remedial or compensatory. *State v. Aguirre*, 2014-Ohio-4603, ¶ 23, citing *Paroline v. United States*, 572 U.S. 434 (2014). We cannot extrapolate from those cases applying the Eighth Amendment in circumstances involving juveniles sentenced to life in prison a rule that a statute authorizing restitution from juvenile offenders, based on victims' actual, proven losses, violates the cruel and unusual punishment clauses of the Eighth Amendment to the United States Constitution, or Article I, Section 9 of the Ohio Constitution.

**{¶ 22}** K.J. cites no legal authority, and this court finds none, holding that a statute authorizing an award of restitution against a juvenile offender violates the Eighth Amendment (or an equivalent provision of a state constitution) because it does not require a court to consider a juvenile offender's age.[1] Nor can we conclude that the order in this case, that K.J. pay restitution of $14,198.21, is so greatly disproportionate to the offenses K.J. committed that it would shock the community's moral sense or sense of justice. *See State v. Chaffin*, 30 Ohio St.2d 13, 17 (1972). The amount of restitution ordered here represents the victims' actual economic loss, as established by a preponderance of the evidence at the restitution hearing. Where the amount of restitution is directly related to the victims' actual loss caused by a defendant or delinquent's illegal activity, " 'proportionality is already built into the order.' " *United States v. Dubose*, 146 F.3d 1141, 1145 (9th Cir. 1998), quoting *United States v. Dean*, 949 F.Supp. 782, 786 (D.Or. 1996); *see also United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008) ("so long as the government proved that the victim suffered the actual loss that the defendant has been ordered to pay, the restitution is proportional"), citing *United States v. Butler*, 137 F.3d 1371 (5th Cir. 1998) (per curiam). Having to pay over $14,000 in restitution may admittedly work a hardship on K.J., but we cannot conclude that it is so grossly disproportionate to his offenses as to shock the community's moral sense or sense of justice.

---

[1] Although some states statutorily permit or require a juvenile court to consider a juvenile offender's age and ability to pay before ordering restitution, *see, e.g.*, Ariz.Rev.Stat.Ann. 8-344; D.C.Code 16-2320.01(b); Mont.Code Ann. 41-5-1521, neither R.C. 2152.20 nor 2152.203 requires Ohio's juvenile court to do so.

{¶ 23} Finally, we note but reject K.J.'s argument that he will not be able work and earn money to pay toward the restitution order until he is at least 16 years old, essentially shortening the time in which he must pay. A minor who is at least 14 years old may obtain an age and schooling certificate, which would permit the minor to be employed in Ohio, subject to certain restrictions. R.C. 3331.01(B)(1) and 4901.02. *See also* R.C. 4109.05 and 4109.07. The trial court also referred K.J. to the court's restitution program, through which K.J. acknowledges he can earn $500 toward his restitution. The trial court did not order K.J. to pay the restitution award immediately, in a lump sum. Rather, it ordered K.J. to pay restitution by January 1, 2027, giving him nearly three years to pay. The trial court furthermore retains jurisdiction over the restitution order until K.J. turns 21 years old, and may, upon motion, modify the payment terms as it determines appropriate. R.C. 2152.203(F) and 2152.20(A)(3).

{¶ 24} For these reasons, we conclude that neither R.C. 2152.203 nor the restitution order in this case violates the prohibitions against cruel and unusual punishment in the Eighth Amendment to the United States Constitution or Article I, Section 9 of the Ohio Constitution. We therefore overrule K.J.'s first assignment of error.

## B. Assignment of Error No. 2

{¶ 25} We now turn to K.J.'s second assignment of error, in which he argues that the trial court erred by ordering him to pay the full amount of restitution instead of apportioning it "among the three Co-Defendants in this case." By "Co-Defendants," K.J. refers to the other occupants of the vehicle he was driving at the time of the collision, but there is nothing in the appellate record to indicate that those other occupants were cited for a traffic violation, charged with any offense in juvenile court, or declared delinquent children or juvenile traffic offenders. Nevertheless, K.J. maintains that the trial court should have apportioned any restitution amongst all three occupants, and that he should only be responsible for one-third of the total restitution amount.

{¶ 26} We review a juvenile court's disposition, including its decision to award restitution, for an abuse of discretion. *In re D.W.*, 2019-Ohio-5259, ¶ 7 (10th Dist.), citing *In re D.S.*, 2006-Ohio-5851, ¶ 6; *In re N.V.*, 2024-Ohio-2197, ¶ 15 (6th Dist.), citing *In re A.B.*, 2021-Ohio-4273, ¶ 8 (1st Dist.). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217,

219 (1983). Here, the trial court did not abuse its discretion by ordering K.J. to pay the full amount of restitution.

{¶ 27} First, neither R.C. 2152.20(A)(3) nor 2152.203 authorizes a juvenile court to order restitution from a juvenile whom it has not adjudicated a delinquent child or a juvenile traffic offender. Thus, there was no basis for the trial court to order restitution from the other occupants of the car K.J. was driving, as they were not before the court and had not been adjudicated delinquent children or juvenile traffic offenders. Further, even if the other occupants had been properly before the court, neither R.C. 2152.20(A)(3) nor 2152.203 requires a juvenile court to apportion restitution. R.C. 2152.203(B) instructs the court to "order *full* restitution for any expenses related to the victim's economic loss." (Emphasis added.) That is precisely what the trial court did here; it ordered K.J. to make full restitution to the victims for the economic loss caused by K.J.'s traffic offenses. K.J. was driving the vehicle, and it was his violation of the traffic laws that caused the collision and gave rise to the victims' economic losses. That there were other occupants present in the vehicle does not render the trial court's order of full restitution against K.J. an abuse of discretion. Accordingly, we overrule K.J.'s second assignment of error.

## III. CONCLUSION

{¶ 28} Having overruled both of K.J.'s assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

BEATTY BLUNT and LELAND, JJ., concur.

———————————————